E. J. D. MILLER v. THE NORTHERN PACIFIC RAILWAY COMPANY.

Opinion filed May 4, 1908.

Rehearing November 23, 1908.

**Evidence — Records of Sister State.**

1. A public record kept pursuant to the law of a sister state, when properly proved, is admissible in evidence in the courts of this state as prima facie proof of the facts therein recorded.

**Same — Appeal and Error — Harmless Error — Exclusion of Evidence.**

2. Although proof of such foreign record was erroneously rejected by the trial court, such ruling was without prejudice to plaintiff, for the reason that, even if such record proof had been received, he would have failed to substantiate his cause of action by a fair preponderance of the evidence.

Appeal from District Court, Eddy county; *Burke, J.*

Action by E. J. D. Miller against the Northern Pacific Railway Company. Judgment for defendant, and plaintiff appeals.

Affirmed.

*S. E. Ellsworth,* for appellant.

An official record, made by a public officer in the discharge of an official duty under obligation of his oath of office and of a penalty imposed by statute, is admissible as competent evidence of the facts required by law to be shown by it. 1 Gr. on Ev. (14th Ed.) Secs. 483, 484, and 493; 9 Am. & Eng. Enc. Law (2nd Ed.) 882, 883.

A record made by a deputy legally authorized is of equal force as that of his chief. 111 Wig on Ev. Sec. 1633, par. 8, and 1635, par. 2.

Official entries are prima facie evidence of the facts therein stated. Rev. Codes, 1899, Secs. 5697-5698.

Records of a foreign office are equally competent with those of a domestic officer. III Wig. on Ev. 1652, Sec. 1633, Par. 3.

Foreign records may be proved by a copy sworn to by a witness that it is a true transcript of the original. Enc. of Ev. 828; 1 Gr. on Ev. (14th Ed.) 581; III Wig. on Ev. Sec. 1679, par. 2.

*Ball, Watson & Maclay,* for respondent.

Records to be admissible must be of public concern, otherwise they might be inadmissible in the state of their origin, and inadmissible abroad. Gordon v. Bucknell, 38 Ia. 438; Buffalo v. Aid Ass'n.,

27 N. E. 942; Kerr v. Railway, 57 N. Y. Supp., 794; Insurance Co. v. Kielgast, 22 N. E. 467; Wasey v. Ins. Co., 85 N. W. 459; Beglin v. Iris. Co., 66 N'. E. 102; Ohmeyer v. Woodman, 91 Mo. App. 189; Woodmen v. Grandon, 89 N. W. 446; Hjennessy v. Ins. Co., 52 Atl. 490.

Mere difference in weights, in the absence of proof of the correctness of the two weights, is not sufficient to establish a liability. Eaton v. Newmark, 33 Fed. 891; 37 Fed. 375.

Error in the exclusion of evidence is harmless, if it would not affect the result if received. 2 Enc. Pl. & Pr. 563, 499; Brundage v. Mellon, 5. N. D. 72, 63 N. W. 209.

*S. E. Ellsworth,* for appellant, in reply.

A common carrier is an insurer, except against loss by inherent defect in the goods, act of God, the owner or public enemy, and such loss must be proved by him. Cownie Glove Co. v. Merchants Dispatch Trans. Co., 106 N. W. 749; Wabash Ry. Co. v. Sharpe, 107 N. W. 758; Hill v. Sturgeon, 28 Mo. 323; Heck v. Mis. P. Ry. Co. 51 Mo. App. 532.

He must show that the loss or injury is from a cause that he is not responsible for. Nashville Ry. Co. v. Stone, 79 S. W. 1031; Hull v. Chicago Ry. Co. 43 N. W. 391.

His default in delivering goods as per contract, is presumptive evidence of negligence. Glack v. Goodrich Transp. Co. 13 N. W. 244; Phoenix v. Ry. Co. 20 Atl. 1058; The Warren Adams, 74 Fed. 413; Georgia Ry. Co. v. Keener, 21 S. E. 287; 6 Enc. Law and Proc., 519; III Wigmore on Ev. Sec. 2508; Adams Express Co. v. Holmes, 9 Atl. 166; The E. M. Norton, 15 Fed. 686; Penn. Ry. Co. v. Liveright, 43 N. E. 162; Cleveland Ry. Co. v. Tyler, 35 N. E. 523; Grogan v. Adams Express Co., 7 Atl. 134.

Prima facie case is shown by delivery and failure to re-deliver. Gulf Ry. Co. v. Roberts, 85 S. W. 479; Grier v. St. Louis Ry. Co., 84 S. W. 158.

Mode of authenticating documents prescribed by Sec. 906 Rev. Codes of U. S. does not exclude others. Gribble v. Pioneer Press Co., 15 Fed. Rep. 689.

FISK, J.  This is an appeal from a judgment of the district court of Eddy county in defendant's favor rendered pursuant to a verdict directed by the court.

The action was brought to recover damages from defendant, as a common carrier of freight, for alleged negligence in transporting a certain car of flax belonging to plaintiff from Barlow, in this

state, to Duluth, Minn., whereby it is claimed that a certain quantity of such flax was lost in transit.   The car was consigned to Crumpton & Crumpton, commission brokers at West Superior, Wis., and in due course the same was sold by them at Duluth and a return of the proceeds made to plaintiff, which returns were based upon weights taken by the state weighmaster's department of the state of Minnenosa at Duluth.  Plaintiff, to prove his cause of action, relied solely upon the discrepancy between the weights taken at Barlow at the time the flax was loaded into the car and the weights as shown by the records in the office of the state weighmaster aforesaid; no evidence being offered to show leakages in the car or that it had been tampered with while in transit.  Appellant relies for a reversal of the judgment upon alleged errors of the trial court in rejecting testimony offered by him to show the records made in the office of the state weighmaster pertaining to the car of flax in question.   This testimony consisted of a deposition of one J. B. Sutphin, state weighmaster at Duluth, who testified that, according to his records, the car was weighed by one Bagley at the time of its arrival, who was at that time a properly qualified assistant weigher in his department, and that such assistant made a record in writing of the date, description, and weight of the car and turned the same into his office in regular course of business pursuant to his official duty, where it had been at all times since.  The witness had no personal knowledge of such weighing and did not know of his own knowledge whether it was correctly weighed or not.  All he knew about it was that it was weighed in accordance with the system in vogue in his department and in accordance with the statutes of Minnesota in force at that time applicable thereto.

The court was asked to take judicial notice of the 1894 General Statutes of the state of Minnesota, creating the department of state weighmaster at Duluth, and especially to section 7705 thereof, pertaining to the records to be kept by that department, which law requires the state weighmaster and his assistants to make true weights and to keep true records of all grain weighed by them.  Plaintiff at the taking of the deposition, offered in evidence the original record of the date, description, and weight of the car as shown by the entries made by Bagley, the assistant weighmaster; but defendant objected thereto, which objection was sustained by the trial court and the testimony excluded.  Plaintiff then offered a copy of such record duly proved by the witness to be correct, which offer was rejected

upon the same grounds urged against the introduction of the original record. These rulings constitute the grounds upon which appellant's assignments of error are predicated. It is appellant's contention that the record, being a public record kept pursuant to law, was admissible in evidence and was at least prima facie proof of the facts therein stated, and that with such record in evidence he would have made out his cause of action, as, according to the facts stated and shown by such records, defendant delivered to the consignee about 90 bushels of flax less than it received from plaintiff at Barlow. If this testimony was properly rejected, this ends plaintiff's case; but, if it was improperly rejected, a new trial must be ordered, provided such record would, with other evidence in the case, have made out a prima facie cause of action as alleged. The question is therefore squarely before us as to whether or not a record, such as the one in question, made by a public officer in a sister state, is any evidence per se in the courts of this state of the facts recited in such record as against a third person, a stranger thereto.

Under the provisions of the Minnesota law in question, we find nothing in express terms making such record prima facie evidence of the truth of the matters therein set forth in the courts of Minnesota; but this law does provide that such weighmaster and his assistants shall, upon demand, give to any person or persons having weighing done a certificate under his hand and seal showing the amount of each weight, number of car, etc., and that such certificate shall be admitted in all actions, etc., as prima facie evidence of the facts therein contained. The Code of this state (section 7298, Rev. Codes 1905) provides that: "Entries in public or other official books or records made in the performance of his duty, by an officer or board of officers, or under the direction and in the presence of either in the course of official duty is prima facie evidence of the facts stated therein." And section 7299 of the same Code provides that: "An entry made by an officer, or board of officers, or under the direction and in the presence of either in the course of official duty is prima facie evidence of the facts stated in such entry." It is contended by counsel for appellant that the latter section refers to official records generally, and is not confined to those made by officers in this state. In this we think he is in error. It is apparent to our minds that it was the legislative intent that these sections should apply only to domestic records. There is therefore no express statute in force in this state making foreign records, such as the one in question, prima facie or any evidence per se of the

facts therein stated; but the sections above quoted, in our opinion, are not exclusive in their provisions, and, as we construe them, there is nothing therein contained which restricts or limits the courts to domestic records in giving effect to them, when properly proved as prima facie evidence. While the question is not free from doubt, and while there seems to be a dearth of authorities upon the precise point here involved, we are of the opinion that the testimony was admissible and should have been received. We think it comes within the well-recognized exception to the rule excluding hearsay testimony in cases of public records made by public officers in the discharge of their official duties. We know of no good reason why this exception should be limited to public records in the state where kept, and no such restriction of the rule seems to have been recognized by the authorities. The ground upon which this exception rests is well stated in Wigmore on Ev. vol. 3, §§ 1630-1683; I Greenleaf on Ev. (16th Ed.) vol. 1, §§ 483, 484, 493; I Whart. Ev. §§ 639, 347; 9 Am. & Eng. Enc. Law (2d Ed.) 882-883; 17 Cyc. 306; and cases cited. In par. 2, § 1633, of Prof. Wigmore's valuable work on Evidence, it is stated: "The subjective influence of the official duty being the essential justifying circumstance, it follows that an official statement by a foreign officer is equally admissible with one made by a domestic officer. That the duty is not recognized by the domestic law is immaterial; it exists for the foreign officer; and so far as it exists, it affords an equally official sanction. This application of the principle, though plain, has rarely been drawn in question." And again, in section 1652, the same author states: "That an official statement authorized to be made as the statement of a foreign officer does not make it any the less admissible. The essential thing is the authority of the officer, and a foreign authority equally satisfies the principle. There is, in the United States, the additional consideration that, under the federal Constitution (article 4, § 1) and the federal Revised Statutes (section 906 U. S. Comp. St. 1901, p. 677), the courts of each state are required to give full faith and credit to the records of other states, and this may well be held to imply that recognition should be given (not merely as a matter of comity, but as a matter of legal right) to an official authority created by the laws of another state for its domestic recording officers."

Having reached the conclusion that the proof offered should have been received, we will next consider the question as to the sufficiency of the evidence including the record evidence which

was rejected, to have required the trial court to submit the case to the jury, for, of course, the error in rejecting the offered proof was without prejudice, if it would have been the duty of the court, with such record evidence in the case, to have directed a verdict as it did. As the proof would have stood had such record been received, we think plaintiff would have failed to establish his cause of action. The prima facie proof furnished by the records as to the weight of the flax, when delivered at its destination by defendant, was, we think, entirely overcome by the other evidence contained in the deposition of the witness Sutphin, the state weighmaster at Duluth, wherein he testified, in substance, that the assistant weighers, under a rule in force in his department at the time the car in question was weighed, were required to make a careful examination to see if there was any leak or defect in the car by which grain might escape, and to make a notation on the records in case any such leak or defect is discovered, and that no such notation appears on his records, and that so far as his records indicate, this car was in perfect condition when it came to his department. He also testified that the men under him are supposed to carry out his instructions, and that he is very careful to see that they do. It is presumed that these instructions and rules were observed, and hence there is prima facie evidence in this deposition that the car was in perfect condition, and that there were no leaks. This testimony is corroborated by that of the plaintiff himself that he examined the car before and after loading it, and that it was a good car. He testified: "It was not a new car, but it was a good car. It seemed to me to be all right. Although it wasn't a grain car, I had no hesitancy in loading my flax into it. I did not have any anxiety after I found out that the car was overloaded that some of the flax would leak out. I felt that the car was a good one any way. I examined it previously and was satisfied that it was good." Plaintiff knew when he accepted the car that it was not a grain car and was not provided with a grain door, and he accepted the same and prepared it himself for the shipment of the flax by placing boards across the doorways in place of the usual grain doors. There is no evidence of an actual loss of any of this grain through defects in the car causing leakages, but on the other hand, the proof tends to show the contrary. The only evidence of a loss at all, as we said before, is the discrepancy between the weights at Barlow and the prima facie weights at Duluth as disclosed by the state weighmaster's records. Plaintiff's testimony therefore consists of a mere

conclusion deduced from two facts, one of which rests wholly upon a prima facie presumption, and the other is by no means conclusively established. The flax was weighed by three different persons at Barlow, none of whom, so far as the evidence discloses, was familiar with the scales or with such work, and furthermore no proof was offered showing the correctness of such scales, except the testimony of the witness Peterson, to the effect that they were in good order at the time, and the testimony of the witness College, who said: "All I know about the scales upon which I weighed this flax is that they were balanced right. I took it for granted that they weighed correctly. We conclude therefore that it would have been mere guesswork on the part of the jury as to whether or not any of this flax, and, if any, how much, was in fact lost in transit, as claimed by plaintiff, and hence the plaintiff conceding the record to have been admitted, wholly failed to prove his cause of action by a fair preponderance of the evidence. It is at least just as probable, if not more probable, under the evidence, that all the flax placed in the car was delivered by defendant, as that a portion thereof was lost in transit.

In conclusion, we hold that, while it was error for the trial court to exclude the record testimony offered as to the weight of the flax at Duluth, the ruling excluding the same in no manner prejudiced the plaintiff, and hence, under the rule adopted by this court to the effect that a reversal will not be ordered for error in excluding testimony when the plaintiff, even assuming that the excluded evidence is in the case, has failed to make out his cause of action, the judgment should be affirmed. Brundage v. Mellon, 5 N. D. 74, 63 N. W. 209. See, also, 2 Enc. Pl. & Pr. 563, 499.

Judgment affirmed. All concur.

## ON REHEARING.

A rehearing having been granted in this case, we have again considered the questions presented, and after mature delibration  e are forced to adhere to the views expressed in the foregoing opinion.

Counsel for appellant strenuously contends that there was sufficient evidence, when the record proof of terminal weight is considered, to require a submission of the case to the jury. He also contends, in any event, that the ruling of the trial court in excluding

the record proof offered to show the terminal weight of the grain was prejudicial error. Both of these questions were raised and squarely passed upon at the prior hearing; but, in view of the earnestness and zeal of appellant's counsel in pressing these questions again to our attention, we will once more briefly consider his contentions. As stated by him, it is entirely true that, in an action against a common carrier for loss of goods in transit, a prima facie case is established by proof that the carrier received the goods for transportation and failed to deliver them safely. Conversely stated, the rule is that, in order to make out a prima facie case, plaintiff must prove that the goods received by the common carrier were not all safely delivered. How stands the proof, assuming that the record evidence of terminal weights was admitted? The most that can be claimed is that, according to the private scales at Barlow, upon which the grain was weighed, there were delivered to defendant 1,328 bushels of flax, and that, according to the records in the office of the state weighmaster at Duluth, which are prima facie correct, there were delivered to the consignees only about 1,237 bushels. From such mere prima facie discrepancy in the weights as recorded on these two scales the inference or conclusion is deduced that 90 bushels of flax were lost or taken from the car while in transit. Not a scintilla of evidence was offered aside from the above to prove that any flax was in fact lost or removed from the car; plaintiff's entire case resting upon the mere inference aforesaid. Thus it is seen that plaintiff's entire case rests upon a mere inference or presumption based, not upon facts, but merely upon other presumptions, to wit, that the Barlow scales were accurate, and that the public record in the state weighmaster's office speaks the truth. Presumptions or inferences cannot be based upon other presumptions, but must be based upon proven facts. Not only this, but a presumption ordinarily has no probative force, and, when contrary evidence is adduced, the presumption disappears. 9 Enc. of Ev. 885, and cases cited; 16 Cyc. 1051-1087; 22 Am. & Eng. Enc. of L. (2d Ed.) 1236, and cases cited. The reason for the rule is well stated in Diel v. Mo. Pac. Ry. Co., 37 Mo. App. 454, as follows: "Presumptions and inferences are logically the same. From one fact proven, another may be inferred or presumed, if the inference or presumption is a logical result, and as such legally admissible; but to hold that the fact thus inferred or presumed at once becomes an established fact

for the purpose of serving as a base for a further inference or presumption would be to spin out the chain of presumptions into the regions of the barest conjecture." See also, Chicago, R. I. & Pac. Ry Co., v. Rhoades, 64 Kan, 553, 68 Pac. 58, and cases cited. Is it a fair and logical inference or presumption that 90 bushels of the flax were lost in transit merely because of the prima facie discrepancy in the two scales of that amount? We think not, nor do we think the jury should be permitted by mere guesswork or conjecture to draw any such inference. It would be just as reasonable to account for such prima facie discrepancy in other ways. The scales at Barlow may not have weighed accurately, or some of the persons who weighed the grain may have made a mistake or have been careless in recording such weights. This is true also with reference to the deputy weighmaster at Duluth. Again, it may be that the entire 17 loads claimed to have been weighed at Barlow were not put into the car or that during the two days plaintiff and his men were engaged in loading the car some of the flax was taken therefrom. Defendant's liability as such common carrier did not arise until the car was loaded and ready for shipment. Until such time the grain was wholly at plaintiff's risk. There is no testimony tending to show that some of the flax was not removed or could not have been taken from the car during the two days required in loading it. Jurors will not be permitted to guess or speculate what the facts are and base a verdict on mere inferences or presumptions. Union Pac. R. R. Co. v. Bullis, 6 Colo. App. 64, 39 Pac. 897. This they would have had to do under the state of the proof in the case at bar, had the case been submitted to them.

Thus far we have assumed that plaintiff sufficiently proved the fact that he delivered to the defendant, by placing in said car, the amount of flax claimed by him to have been thus delivered. An examination of the testimony serves to convince us that his proof in this regard is by no means satisfactory. Plaintiff testified. "My flax was loaded in this car. I helped to load it. I couldn't say that I was there during the entire loading. There might have been some work while I was away. There might have been some put in there before I was there to put it in. I helped do the hauling. I hauled some loads. Quite a number of different men assisted me doing that hauling. I knew their names, but I might miss some of them. I did not do the weighing. The weighing of the flax

placed in the car was done by Jesse College, I. E. Sutherland, and Glenn Sutherland. These three men weighed all the flax placed in the car. They brought in loads the same as the rest of the haulers. I think there were 17 loads went into the car. I wouldn't be positive, but I think that was it. I had this flax in my granary before I loaded it into the car. I would judge seven or eight, maybe nine people hauled to the car. I could not say, in there somewhere. My granary is 10 miles from the railroad depot where this car was standing. I think there were about 17 loads as near as I could say. I took some of these loads myself. I know I took 2, and possibly 3. I think I had enough teams to put it in. I used two days, the fourth and fifth. I saw it all loaded at my granary and started it. Some got there before I did, and I never heard anything to the contrary but that it went into the car; but I couldn't say how many I saw go direct into the car. I didn't see all of it go into the car. I suppose there were several loads at least which I didn't see put into the car. The flax was weighed at the time of the proceeding when each load got to the car. Three different men weighed it. I know nothing about the weights, except as they told me. I assisted some, but I wasn't there all the time, because my end was at the granary. I was there until the last wagon left. I counted the loads that were taken away from my granary to be put in this car. At this time, as near as I can tell, there were about 17 loads; but I might be mistaken. Seventeen loads is my best remembrance now. None of it was returned by any of these parties, who took it away. This flax was weighed on Mr. Peterson's scales at Barlow. The scales I would judge were 35 yards from the car. I couldn't say how many loads I put into the car after they were weighed." Jesse College testified that he weighed 11 loads of this flax, and knows that the 11 loads went into the car; but he testified that all he knows about the scales upon which he weighed said loads is that they were balanced right, and he took it for granted that they weighed correctly. The witness Glenn Sutherland testified that he assisted in hauling and weighing some of this flax. He hauled two loads and weighed four loads. He says the scales were farm scales, and thinks they were of standard make and in apparently good condition at that time. He says he took the correct weights of the four loads which he weighed and gives the net weight thereof. He also testified that these four loads went into the car. Witness does not know how many loads were put into the car. Witness I. E. Sutherland

testified that he hauled and weighed two loads of the flax and put it in the car, and says he knows the weights to be correct, if the scales were correct. Witness Peterson, the owner of the scales, testified that they were in good order at the time the weights were taken.

Whether plaintiff delivered to the defendant the number of bushels claimed by him to have been delivered depends upon the assumption that these private scales at Barlow were accurate, and that these persons who did the weighing weighed the grain correctly, and, also, that all the grain so weighed was placed in the car, as well as the further fact that none of such grain during said two days was taken thererrom. The amount of grain delivered by defendant to the consignees, as claimed, rests upon the assumption that the scales at Duluth were accurate, and that the deputy weighmaster correctly weighed said car. Is not the inference to be deduced from the mere discrepancy in these weights just as reasonable that one of these scales was inaccurate, or that one of these persons incorrectly, through mistake or otherwise, weighed said grain, as that some of it was lost in transit, especially in view of the testimony that said car was a good car and in good condition, and there being no evidence of any leakage? If the seal was not intact when the car arrived at its destination, such fact could have been shown by plaintiff by the testimony of the inspector at Duluth. The burden was on plaintiff to establish his claim that grain was lost or taken from the car while in transit, and not on defendant to establish the contrary, and plaintiff was not relieved of this duty because of the difficulty in furnishing such proof.

Appellant's next contention, that the ruling of the trial court in excluding the record evidence of the terminal weight was prejudicial error under the rule announced in Brundage v. Mellon, 5 N. D. 72, 63 N. W. 209, is clearly untenable. The case at bar is clearly distinguishable from the Brundage case. The ruling in that case made it impossible for plaintiff to prove his cause of action. As stated in the opinion: "The attitude of the court in such case is that * * * the plaintiff, as a matter of law, cannot recover on the theory of the case on which he is seeking to recover at the trial." In the case at bar the attitude of the court by its ruling was that plaintiff could not prove one feature of his case by the method attempted, not that no recovery could be had if plaintiff proved the fact sought to be proved, to wit, the weight of the

grain at Duluth, together with the other facts alleged by him as constituting his cause of action. In other words, by such ruling plaintiff was not, in effect, told that evidence tending to show loss of the grain in transit would have been rejected if offered. It is apparent that plaintiff relied solely upon the discrepancy in the weights to prove the main fact in his case, and that he had no other evidence to offer on that issue. Therefore the general rule, which is recognized by the court in the Brundage case, that a reversal will not be ordered for error in excluding testimony when the plaintiff, assuming that the excluded evidence was admitted, has failed to prove his cause of action, applies.

Judgment affirmed.

MORGAN, C. J., concurs.

SPALDING, J. (dissenting). I concur in the holding that the record of the weighmaster's office at Duluth should have been admitted, but cannot concur in the conclusion that a new trial should be denied.

It is clear to me that the exclusion of the record referred to may have been highly prejudicial to appellant. He may thereby have been prevented from furnishing the very proof that in effect is held by my associates was necessary to have made his case. He had shown the quantity of flax delivered the defendant at Barlow, and had attempted to prove a smaller quantity delivered at Duluth; but the trial court rejected the evidence of the latter. The opinion holds that such evidence should have been received; but that, if it had been admitted, defendant would not have made a prima facie case, because there was no proof of actual leakage. After the denial of the plaintiff's right to show the difference in weights, it would have been an idle ceremony for him to have offered proof of actual leakage from the car. This court, in the absence of any showing in the record, cannot assume that plaintiff might not have been able to show the very facts held to be essential to make his case. He should have the opportunity to make proof of such facts if he can do so. The record does not present the question that would be presented if plaintiff had furnished his proofs in other respects before the record evidence was excluded. As to whether, with the record evidence in the case, appellant would have made a prima facie case, I express no opinion.