WILLIAM A. DUNCAN V. GREAT NORTHERN RAILWAY COMPANY,
A CORPORATION.

Opinion filed November 27, 1908.

**Carriers — Injury to Freight — Exemptions from Liability.**

1. An inland common carrier is an insurer against loss of property consigned to it for carriage between its receipt at shipping point and arrival at destination when unaccompanied by the consignor, except from loss occasioned: (1) By an inherent defect, vice or weakness, or spontaneous action of the property itself; (2) the act of a public enemy of the United States or of this state; (3) the act of the law; or (4) any irresistible superhuman cause; (5) and it may also be assumed that certain acts of the consignor may exempt the carrier from liability.

**Same — Evidence.**

2. On proof of delivery of the property to the carrier in sound condition, and of its redelivery at the end of the route in damaged condition, or a failure to redeliver it, a sufficient case is made to sustain a recovery for the damages or loss by the shipper.

**Same — Burden of Proof.**

3. The burden of proof is upon the carrier to exempt himself from liability in case of loss or damage by showing that it was occasioned by one or more of the exceptions mentioned under paragraph 1.

**Same — Loss of Freight — Evidence.**

4. The evidence in this case shows that a quantity of flax was loaded by the plaintiff and his servants into a car furnished by the defendant for such purpose, that inside doors were furnished by the defendant carrier and used and fastened with appliances provided for that purpose by defendant, in the usual manner, and that the loss complained of occurred while such flax was en route to Duluth, some or all of it by reason of a small inside door used for retaining the flax in the car, hung on hinges at the top, coming open.

The defendant failed to show that the door opened by failure on the part of plaintiff to properly fasten it. It was closed by defendant's conductor at the station where the leak was discovered, but the inspector at Duluth reported a leak in the same place on the arrival of the car at its destination. *Held*, that the evidence fails to bring the defendant within the exceptions to the law holding it liable.

**Same.**

5. The shipper inserted in the car inside doors for retaining the flax, such doors being furnished by the carrier, and supplied with a fastening device. The evidence shows that these doors were properly fastened, with the device so furnished, by the shipper and assistants, all of whom were familiar with the use of such doors and

devices. The car, .after being so loaded with these doors inserted, was receipted for, and the outside doors closed and sealed by the defendant's 'agent, who had full opportunity to observe while closing the outside doors whether the inside doors were properly fastened. *Held* that, if they were not properly fastened, in view of these facts, the carrier is not relieved from liability for loss occasioned thereby.

**Same — Direction of Verdict.**

6. Plaintiff showed by himself and other competent witnesses that the inside doors referred to were properly closed and fastened with the device furnished by defendant for that purpose. The only evidence claimed to create a conflict arises from the fact that, a few miles after the car started on its journey, one of the inside doors referred to came open, and a quantity of flax with which the car was loaded ran out through the opening. so made. *Held,* that such door opening may as readily be attributed to other causes as to the failure of the shipper to properly fasten it, and had the question been submitted to a jury, a verdict for defendant, based upon the fact that such door came open in transit, could only have been arrived at by inference, and would have been mere guesswork on the part of the jury under the facts of the case, and that the opening of this door did not create a sufficient conflict in the evidence to constitute error on the part of the trial court in directing a verdict for plaintiff.

**Trial — Direction of Verdict.**

7. On submission of all their evidence, both parties made motions for a directed verdict. Neither party requested the submission of any facts to the jury. *Held,* that they thereby waived any right which they might have otherwise had to an undirected verdict, and are estopped from assigning error for not submitting the facts to the jury.

Appeal from District Court, Rolette County; *Cowan,* J.

Action by William A. Duncan against the Great Northern Railway Company. Judgment for plaintiff. Defendant appeals.

Affirmed.

*Murphy & Duggan,* for appellant.

Revised Codes 1905, section 5690, imposing liability on carrier for shipper's fault is unconstitutional. Hutchinson on Carriers, sections 265, 328; Van Zile on Carriers, section 478; Texas & P. Ry. Co. v. Edins, 83 S. W. 253; Goodman v. Ore. Ry. Co., 28 Pac. 894; Cottrell v. Union Pac. Ry. Co., 21 Pac. 416; O. R. & N. Co. v. Smalley, 23 Pac. 1008; Birmingham Mineral Ry. Co. v. Parsons, 27 L. R. A. 263; Wadsworth v. Union Pac. Ry. Co., 23 L. R. A. 812; Railway Co. v. Parks, 32 Ark. 131; Zeigler v. Railway

Co., 58 Ala. 595; Jenson v. Union P. Ry. Co., 21 Pac. 994; Schenck v. Union Pac. Ry. Co., 5 Wyo. 530; So. Alabama Ry. Co. v. Morris, 65 Ala. 193; Cooley Const. Lim. (5th Ed.) page 430, 436; Beelenberg v. Montana Union Ry. Co., 20 Pac. 314.

*Burke & Middaugh,* for respondent.

A corporation cannot complain of a law in force where its franchise is granted.   Bohannan v. Hammond, 42 Cal. 227; Jackson v. Sac. V. R. Co., 23 Cal. 268; Thomas v. Ship Morning Glory, 13 La. Ann. 269, 71 Am. Dec. 509; Gage v. Tittell, 9 Allen. 299; Christenson v. Am. Express Co., 2 Am. St. Rep. 122; Powell v. Mills, 64 Am. Dec. 158; Davis v. Wabash Ry. Co., 1 S. W. 327; Woolf v. Am. Express Co., 97 Am. Dec. 406; Moses v. Norris, 4 N. H. 304; Gordon v. Little, 11 Am. Dec. 632; Klauber v. Am. Expr. Co., 21 Wis. 21, 91 Am. Dec. 452; Hooper v. Wells, 27 Cal. 11, 85 Am. Dec. 211; Costigan v. Michael Transp. Co., 33 Mo. App. 269; Porter v. Chicago Ry. Co., 71 Am. Dec. 286; Parker v. Flagg, 45 Am. Dec. 101; Miller v. Steam Co., 10 N. Y. 431; Schieffelin v. Harvey, 6 Johns 170; Rixford v. Smith, 13 Am. St. Rep. 42.

SPALDING, J.   This is an appeal from an order denying a motion for a new trial made by the judge of the district court for and within Rolette county.   Plaintiff brought this action to recover for the loss of 9,385 pounds of flax shipped by him over defendant's railway line from Rolla, N. D., to Duluth, Minn.   The defendant denied the allegations of the complaint, and alleged that the loss occurred wholly through the negligence of the plaintiff in not properly loading the car, and in not properly securing and fastening the doors thereof, and that defendant was in no way to blame therefor. A verdict was directed for the plaintiff.

No question is raised as to the amount of flax lost, and the evidence does not disclose any special contract limiting in any manner the liability of the defendant.   The evidence shows that the plaintiff was a grain buyer at Rolla, and had been in the grain business for some years, and was accustomed to loading cars and familiar with the kind of doors furnished by defendant for insertion in the car in which this flax was shipped.   He, with the assistance of others who were likewise familiar with the shipping of grain and flax, loaded the car on defendant's track.   The defendants furnished doors to be placed on the inside of the outside sliding doors,

as is customary in the shipment of grain. These inside doors were fitted with a small door in the center, which opened outward and upward on hinges at the top, and were used for unloading purposes, and were fitted by defendant with a locking device. The plaintiff inserted these inside doors, and the doors and car were coopered; that is, strips of cheese cloth were nailed over the cracks at the bottom and sides of the doors and whereever there were cracks through which flax could escape. There is no evidence that the car was not properly coopered, except that the inspector's records at Duluth show that one of these small doors had no cooperage at the bottom when it arrived at Duluth. This is, however, not important, for the reason that, as will appear later, after the door burst open in transit, it was closed by the train conductor, without recoopering, and it could not have come open without destroying the cooperage placed upon it by plaintiff. The plaintiff and witnesses who assisted him in loading the car all testified fully and explicitly that they fastened these small doors with certain irons furnished by the railroad company for that purpose, and that they were properly closed and fastened. The outside doors of the car were closed and sealed by the agent of defendant. The car was picked up by a regular freight train at Rolla and started on its way. While the train was standing at Perth, the first station south of Rolla, a bystander noticed flax running under the outside door on one side of the car, and reported it to the conductor, who set the car out, and found one of the small hinge doors above referred to open, by swinging out from the bottom, and the flax leaking. The conductor closed the door and stopped the leak, gathered up such flax as he could gather, and replaced it in the car, which was picked up a day or two later and transported to Duluth. Subsequently the leak was traced along the track to a point some distance north of Perth. The fastenings to this door were such as are usual for fastening the kind of inner door used in this car.

Appellant only discusses two questions: First, that section 5690, Revised Codes 1905, is unconstitutional, because it fails to include, among the exceptions for relieving it from liability, loss occasioned by the act of the shipper or owner of the goods. Second, that if the law is constitutional, notwithstanding such omission, there was sufficient evidence that the loss of the grain was caused by plaintiff's negligence to entitle it to have the question submitted to a jury.

Section 5690, supra, reads: "Unless the consignor accompanies the freight and retains exclusive control thereof, an inland common carrier of property is liable from the time that he accepts until he relieves himself from liability pursuant to sections 5638 to 5641, for the loss or injury thereof from any cause whatever, except; (1) An inherent defect, vice, or weakness or a spontaneous action of the property itself; (2) the act of the public enemy of the United States or of this state; (3) the act of the law; or (4) any irresistible superhuman cause." This section is in the main an enactment of the common law making common carriers insurers of property intrusted to them for transportation. In so far as it varies from the common law it does so in favor of the carrier. Many common-law authorities include the act of the shipper as among the exceptions relieving the carrier from liability, but even such authorities do not hold that all acts of every nature done by the shipper relieve the carrier. The liability of the carrier begins when he receives and accepts the goods, and continues until after the arrival at destination. The only defenses which the carrier can interpose, where property is lost in transit, are those named as exceptions relieving him from his liability as an insurer, except in cases where there is a special contract. This court cannot read into the statute an exception which existed at common law. State v. Smith, 2 N. D. 515, 52 N. W. 320. It will be presumed, by reason of the omission of the act of the shipper from the exceptions, that the legislature intended to still hold the carrier liable as against such actions as the principles of justice and fundamental law do not relieve it from. The difficulty lies in determining the line between those acts of the shipper which relieve the carrier from liability and those which by reason of the evident purpose of the legislature do not relieve it. The authorities on this subject are few in number. It is, however, clear that acts of fraud, misrepresentation, or concealment by the shipper relieve the carrier. Fraud invalidates all contracts, and concealment or misrepresentation is fraud. Where the shipper interferes with the property after accepted by the railway company, and the loss is occasioned by such interference, it may well be contended that the carrier is also relieved, and we are disposed to the belief that, when the shipper assumes the responsibility of loading the car and seeing that it is properly prepared for the transportation of the particular article which he is loading, he assumes responsibility for all

defects in package and loading which are necessarily invisible to the agent of the carrier who accepts the freight, or which he· cannot discern by ordinary observation, or such inspection as he can readily make. In this case there is no evidence showing that the car was not properly coopered.

The question is whether it was the duty of the carrier, under the circumstances, to see that the small door referred to was properly fastened, and, if it did not do so, whether it is liable. As stated, the agent accepted the car and its contents for transportation and he himself closed and sealed the outside doors. The devices for fastening the small doors were open to his inspection when he closed the outside doors, and were where he could not avoid seeing them if he looked at all or even used ordinary care or made the slightest effort to ascertain whether they were properly fastened. If he did not do so, or, doing so, failed to call the defect to the attention of the shipper or to remedy it himself, we think the fact, if it were a fact, that they were not properly fastened when he accepted the freight, under the circumstances of this case, does not relieve the defendant from its obligation as an insurer. The terms of the statute are very broad. It reads: "From any cause whatever."

The supreme court, of Iowa passed upon this question in Kinnick Bros. v. Chicago, etc., Ry. Co., 69 Iowa, 665, 29 N. W. 772. The plaintiff in that case shipped a car load of hogs, some of which died in transit, and it was contended 'that their loss was occasioned by overloading the car. ·The court says: "Plaintiffs loaded the hogs on. the car without assistance or direction from defendant's agents or employes. Defendant claimed that the car was overloaded, and that the injury was caused by such overloading. The court instructed the jury that, if defendant had knowledge of the number of hogs in the car, and of the condition of the car as to the loading when it received it, or if it might have known these facts, it could not escape liability for the damage on the ground that the car was overloaded. Exception is taken to this instruction, but we thing it correct. It is not claimed that there was any deceit or misrepresentation by plaintiff as to the condition of the car or to its loading. Defendant's agent, who made the contract for it, went to the car after the loading was done, and closed and sealed· it. There was nothing to prevent him from seeing the manner in which it was loaded. As defendant received the property under

these circumstances, and undertook to transport it to its destination, it should be held to have assumed all the liabilities of a common carrier with reference to it." This case is cited as authority in Swiney v. American Express Company (Iowa) 115 N. W. 212. The case at bar is a stronger one in plaintiff's favor than the Iowa case, for the reason that most authorities recognize a distinction in favor of the carrier of live stock as against a carrier of dead freight. The doctrine of the Iowa case is followed in McCarthy v. Louisville & N. Ry. Co., 102 Ala. 193, 14 South. 370, 48 Am. St. Rep. 29, where the court says: "If the improper loading was apparent—that is, was a fact which addressed itself to the ordinary observation of the carrier's servants—or if it was not apparent, but the carrier was guilty of negligence, but for which the injury would not have happened, the carrier would be liable, notwithstanding the negligence of or imputable to the plaintiffs. If the cars used in this transportation were closed cars and came to the defendant with their doors closed, so that without opening their doors the condition of their contents could not be seen, we should say the improper loading, if they were indeed improperly loaded, was not apparent within the meaning of the rule we have stated." And in Ohio it is said: "The carrier may well refuse to receive the property unless it is properly packed, but if he receives it the duty attaches of exercising due care for its safe carriage. Where the carrier takes charge of the property for the purpose of carriage, the duty rests on him to show that the injury is attributable to the defective packing, and not through any fault or neglect on his part." Union Express Company v. Graham, 26 Ohio St. 595.

On proof of the delivery of the property in sound condition, and its redelivery at the end of the route in damaged condition, or failure to redeliver all or part of it, a sufficient case is made to sustain a recovery for damages or loss. The plaintiff may rest his case on evidence of these facts, and, unless the defendant then submits evidence showing the cause of the loss to be one or more of the excepted causes, the plaintiff must prevail. The burden of proof changes from plaintiff to the defendant when plaintiff has proven the delivery and the failure to redeliver. The authorities are practically uniform on this question, and the reason given is stated to be that, after delivery of the goods to the carrier, they are no longer subject to the shipper's supervision or observation. If they are lost by the carrier, the circumstances surrounding such

loss are without the knowledge of the shipper.    The means and proof of the facts causing the loss are ordinarily wholly within the control of the carrier and its servants.    In most instances the shipper is compelled to do business with the carrier and to intrust to its care on the road and in places distant from the shipper his property, and the burden of proving facts exempting itself from liability as an insurer rests upon the carrier, and requires it to show that the loss occurred by reason of one or more of the exceptions. Moore on Carriers, 386; Hull v. C., St. P., M. & O. Ry. Co., 41 Minn. 510, 43 N. W. 391, 5 L. R. A. 587, 16 Am. St. Rep. 722; Norway Plains Co. v. B. M. R. R., 1 Gray (Mass.) 263, 61 Am. Dec. 432, and note; Wolf v. Am. Express Co., 43 Mo. 421, 97 Am. Dce. 406; Swiney v. Am. Express Co., supra; I. C. R. R. Co. v. Frankenberg et al., 54 Ill. 88, 5 Am. St. Rep. 92; 6 Cyc. 518 (b), and cases cited.    We see no reason for holding the statute in question unconstitutional by reason of the omission to include the act or fault of the shipper among the exceptions.

The second question raised by the appellant, namely, conceding the law to be constitutional, there was conflict enough in the evidence to require its submission to the jury, requires notice.    As we have shown, the testimony of the plaintiff and his assistants who prepared and loaded the car and fastened the inside door with the appliances furnished by the carrier was all positive to the effect that the door had been properly fastened.    It is contended that the fact that the door came open while the car was running creates a conflict in the evidence.    We think there are two answers to this contention:    First, the duty rested on the defendant to show that the loss was occasioned by the fault of the shipper, and the mere fact of the door coming open does not make the showing required.    That the door was fastened is evident from the fact that it remained closed until some time after the car left Rolla.    If it had not been fastened originally, the weight of the flax would have caused the door to swing open before the car started.    The fact that it opened while in transit, in the absence of other proof as to the cause of its doing so, may be attributed just as logically to a rough track, or to the bunting of cars, or starting or stopping with a jar, or to a defect in the fastening, as to the failure to fasten it.    Had it been given to the jury, any verdict which it might have found based upon the fact that the door came open would have been mere guesswork or conjecture, and, had it found this the cause of the

loss, it could only have done so by inference. It will thus be seen that at the most the fact of its coming open, under the circumstances, furnished only a scintilla of evidence which might indicate a failure to fasten it. This court has long since, following the great weight of authority, rejected the scintilla theory of submitting cases to the jury. Fuller v. N. P. Elevator Co., 2 N. D. 220, 50 N. W. 359. In Ogdensburg, etc., Railroad Co. v. Pratt, 22 Wall. 123, 22 L. Ed. 827, the supreme court of the United States held that it is the duty of the carrier to furnish suitable vehicles for transportation, and, if he furnish defective or unsafe vehicles, he is not exempt from responsibility by the fact that the shipper knew them to be defective and used them. In Cleveland, C., C. & St. L. Railway Co. v. Louisville Tin & Stove Co., 111 S. W. 358, 33 Ky. Law Rep. 924, it is said that the owner is not required to see that the cars are suitable or safe. He is not required to show negligence on the part of the railway company. All that he is required to show is the loss of his goods. No defect in the vehicle can excuse a common carrier from its common-law liability. See, also, Hutchinson on Carriers, section 497; Elliot on Railroads, section 1478; 118 N. W. 344.

At the close of the case, both parties submitted motions for a directed verdict. The court denied the motion of the defendant and granted that of the plaintiff. The defendant, after the denial of his motion, made no request to have any question of fact submitted to the jury. It is well established that in such case the party making the motion waives any right to insist that the court should consider other questions, and in view of the fact that appellant did not call the court's attention to any other question, or request that any other part of the case be submitted to the jury, it is now estopped from making such claim. The language of Chief Justice Corliss, in Stanford v. McGill, 6 N. D. 536, 72 N. W. 938, 38 L. R. A. 760, is directly in point. He says: "The defendants having requested the court to direct a verdict in their favor, and the court having instructed the jury to find for the plaintiff, on his motion, the defendants must be regarded as having submitted all controverted facts to the court for decision; no requests having been made by them, after the motion for a directed verdict had been overruled, that any question of fact be submitted to the jury. It follows that if there is any evidence at all to support the verdict, in point of damages, the judgment must be affirmed. The defendants by their motion

took the position that there was no question of fact which they desired to have submitted to a jury, and cannot complain of the decision of any question of fact on which the evidence is conflicting, which the court must be regarded as having made by instructing the jury to find for the plaintiff. After a party has moved the court that the jury be instructed to render a verdict in his favor, he must, if the court denies his motion, specifically request that there be submitted to the jury the questions of fact which he desires to have so submitted. Otherwise he is deemed to have acquiesced in the decision of such questions by the court, and, if the court directs a verdict in favor of the other party, on his motion, the defeated litigant is not in a position, in case of his failure to make such requests, to claim that any issue upon which the evidence is conflicting should have been left to the decision of the jury." See, also, Bank v. Laughlin, 4 N. D. 391, 61 N. W. 473; Bank v. Town of Norton, 12 N. D. 497, 97 N. W. 860; Larson v. Calder, 16 N. D. 248, 113 N. W. 103.

The order of the district court is affirmed.

Morgan, C. J., concurs.

Fisk, J. (concurring specially). I concur in the conclusion arrived at in the forgoing opinion; but in doing so I deem it unnecessary to express any opinion upon the question whether by section 5690, Rev. Codes 1905, the legislative intent was to depart from the well-established rule of the common law relieving the carrier from liability occasioned solely by the shipper's negligence. Conceding the law to be that the carrier is relieved from liability for loss occasioned solely by the negligence of the shipper, as at common law, which is the most favorable rule that is or can be contended for by appellant, still the order appealed from must be affirmed, for the reasons stated in the latter portion of the opinion, which meet with my approval.