L. C. Smith, Appellee, v. Louisville & Nashville Railroad Company, Appellant.

**CARRIERS:** Carriage of Goods—Non-delivery—Variation in Scale
1 **Weights.** In an action against a carrier for shortage in the shipment of coal, the weights at the point of shipment and destination are presumptively correct, and the trial court may very properly disregard testimony tending to show, in substance, that scales frequently disagree as to the weight of such commodity.

**CARRIERS:** Carriage of Goods—Non-delivery—Loss by Evaporation.
2 In an action against a carrier for a shortage in the shipment of coal, the trial court may very properly refuse to deduct from the apparent weight any percentage or amount for *evaporation*, when the testimony relative thereto simply consists of Federal bulletins of the department of mines, tending to show that in such shipments there is, at times, and under different conditions, a variable loss of weight by evaporation.

**CARRIERS:** Carriage of Goods—Bills of Lading—Proper Identification.
3 A bill of lading is amply identified as issued by the initial carrier by a showing that it was in the hands of the consignee and was by him delivered to and accepted by the delivering carrier when the consignee received the goods. Especially is the identification ample when the initial carrier by its correspondent admits the genuineness of the bill.

CARRIERS:   Carriage of Goods—Failure to Deliver—Measure of Damages.  In an action against a carrier for a shortage in the delivery of a shipment of coal, the value of the shortage *at the point of shipment* is not an improper measure of damages.

EVIDENCE:   Opinion Evidence—Competency of Expert—Value at Distant Market.  A coal dealer who has for a long time purchased coal at points in a foreign state is competent to testify to the value of such commodity at said foreign points.

Headnote 1:  10 C. J. p. 276.   Headnote 2:   10 C. J. p. 278 (Anno.)
Headnote 3:  22 C. J. p. 943.   Headnote 4:   10 C. J. p. 278 (Anno.)
Headnote 5:  22 C. J. p. 695.

Headnote 4:  4 R. C. L. 930.   Headnote 5:   11 R. C. L. 638.

*Appeal from Des Moines Municipal Court.*—HERMAN F. ZEUCH, Judge.

JUNE 21, 1926.

REHEARING DENIED SEPTEMBER 24, 1926.

Action at law in five counts, for the recovery of damages for shortage in shipments of coal.  The case was tried to the court without a jury, and judgment was entered in favor of the plaintiff for the amount claimed.  The defendant appeals.— *Affirmed.*

*Sargent, Gamble & Read,* for appellant.

*Emmert & James,* for appellee.

EVANS, J.—I.  The plaintiff's assignor was a coal dealer engaged in business in the city of Des Moines.  The plaintiff was its traffic manager.  The defendant is a railroad corporation organized under the laws of Kentucky, and engaged in interstate transportation.  In December, 1922, and January, 1923, it received for shipment, at various points in the state of Kentucky, five cars of coal, each consigned by a local shipper to plaintiff's assignor, as consignee.  The purported bills of lading for these shipments came into the hands of such consignee, and are contained in this record.  The shipment was a through shipment, and the delivering carrier at Des Moines was the Minne-

apolis & St. Louis Railroad Company,—not a party to the case. The plaintiff claims for a shortage in the quantity of coal delivered, as compared with the quantity delivered for shipment to the initial carrier in Kentucky. The measure of damages claimed is the value in Kentucky of the amount of coal measured by the shortage. The amount claimed for the shortage in each car, as set forth in each count, varies in amount from $10 to $30. The total amount claimed is $80. The trial court certified the case as a proper one for appeal, in view of the questions presented therein. The only question we find in the record which would justify a certification is that set forth in assignment of error No. 12. The point there made appears to have been the prominent reason that stimulated a defense in the case, and that justified the certification. But the defendant has assigned a sum total of 13 errors, and has devoted perhaps the major part of its argument to elementary questions, as claimed by it, largely pertaining to the admissibility of evidence. On the major question in the case the argument is very brief, though well to the point. We give such question our first consideration.

The plaintiff relied for proof of the amount of coal delivered in each car to the initial carrier upon the respective bills of lading issued by such carrier, the defendant herein. At the request of the consignee, each car was reweighed by the delivering carrier at Des Moines. In each case the quantity of coal as shown by such weighing in Des Moines was substantially less in each car than was the amount shown by the respective bill of lading. The amount allowed for the shortage in each case was $6.00 a ton for the apparent shortage,—this being the Kentucky price for the coal.

The issue on the question of shortage was made by general denial. On the trial, however, the defendant put forward what was in the nature of an affirmative explanation of the shortage, in some degree. This explanation may be stated in two parts:

(1)  That certain experiments made by the bureau of mines of the department of the interior of the United States show that a car of Kentucky coal in the course of shipment from Kentucky to Des Moines will lose a substantial part of its weight by evaporation. The amount of such evaporation is found to be variable, and dependent upon existing conditions, and ranges in degree from ½ per cent to 4 per cent. The defendant contends that the

amount of shortage indicated by the scale weights should have been reduced by the amount of such evaporation. It assigns error because the trial court allowed it no consideration. It contends that it ought to have been allowed credit for at least 1 per cent.

(2)   It contends further that it is not practicable to obtain exact weights of cars of coal, because of a normal variation as between different scales. It calls this variation a "scale toler-

1. CARRIERS: carriage of goods: non-delivery: variation in scale weights.

ance," and contends that this "tolerance" or difference runs from 500 to 1,000 pounds, as between different scales, in the weighing of a carload. It contends, therefore, that this "scale tolerance" should have been considered by the court, and that the shortage in each case should have been deemed accounted for by such "tolerance" to the extent of at least 1 per cent of the weight of the carload.

We take up the second point first. No reason is suggested by the appellant why the "scale tolerance" should be deemed to uniformly work a shortage. Such "scale tolerance" being assumed to be a normal condition or result, and beyond the control of the human will, then the law of probabilities would tend to distribute it equally on each side of the correct line. To assume that it would work only on the "short" side would be to attribute to it the human frailty of partiality. The respective weights were made both at the shipping and at the delivering end by the carriers, and must be deemed presumptively correct.

It is further to be noted that, under the rules of the Interstate Commerce Commission, "scale tolerance" is not to be tolerated beyond a difference of 100 pounds. We are clear that the trial court did not err in refusing to allow the appellant for a "scale tolerance."

The other point herein made presents a somewhat different question. The only question of law, however, presented thereby is whether the fact thus alleged presents a partial defense to the

2. CARRIERS: carriage of goods: non-delivery: loss by evaporation.

claim of shortage. It is true, of course, that an "act of God" is available as a defense to the carrier, as against the claim of loss. We may as well concede that natural evaporation is an "act of God." The question of fact still remains as to whether the shortage claimed was caused in whole or in part by the

evaporation. The burden, in any event, was upon the defendant to plead and to prove the defense. It did not plead it. Did it prove it? That question was for the trial court, in the first instance. We can interfere with the finding of fact only if the evidence is conclusive on the question. Here again we have a variable factor. We may assume that the evaporation would be greater in hot, dry weather, than in wet or cold weather. The same intrinsic quality or character which renders coal subject to loss of weight by evaporation renders it subject also to increase by absorption. The shipments in this case were made in the dead of winter. No specific evidence was offered as to the probabilities of evaporation or absorption under the particular weather conditions existing at the time of the shipment. The defendant introduced in evidence two bulletins (No. 123 and No. 193) issued by the bureau of mines. Each bulletin is a volume of about 400 pages. They purport to set forth analyses of samples of coal taken from hundreds of mines in every coal state in the Union. These bulletins were put in evidence *in solido*, as Exhibits 2 and 3. They cover experiments made between the years 1913 and 1919, inclusive. The particular part of these volumes which may be specially relied on by the appellant was not pointed out in the court below, nor is it pointed out even in argument here. It would be uncandid to say that we have read these volumes, and equally so to say that the trial judge ought to have read them. Sufficient now to say that only a question of fact is presented at this point; that the only evidence offered in support thereof is the bulletins; that this evidence is not of such a nature as to be conclusive upon the trial court on the issue urged by appellant.

We hold that the trial court did not err in disregarding the claim that evaporation was the cause of the shortage.

II. The appellant complains of certain rulings on the admission of evidence. This complaint is directed mainly to the introduction in evidence of the bills of lading. We will confine

3. CARRIERS: carriage of goods: bills of lading: proper identification.

our discussion to Exhibit C, the first bill of lading introduced. The offer of it was objected to by the defendant on the ground that it was not sufficiently identified, and on the ground that its execution was not proved. The argument is that a bill of lading is a mere contract, and is admissible in evidence only

after due proof of its execution has been made. We are not prepared to accept the contention of the appellant that the same rule of preliminary evidence applies to a bill of lading as applies to any ordinary contract. Under the Interstate Commerce Act, the initial carrier is bound to issue a bill of lading. It may, therefore, be presumed that every shipment is attended with a bill of lading. The hand of the consignee is the natural destination of the bill of lading. The delivering carrier is entitled to its surrender, upon delivery of the shipment to the consignee. If, therefore, the delivering carrier accepts from the consignee a purported bill of lading issued by the initial carrier, and delivers the shipment thereunder, this would seem to be persuasive evidence of the identity of the bill of lading, in the absence of challenge from any source. We think it sufficient prima-facie proof to warrant its offer in evidence. The bill of lading is a part of the currency of transportation commerce. Counterfeits are always possible, but, even so, are very exceptional. If a counterfeit be discovered, let the discoverer speak. In such a case, the issue would become a major one, and not a mere preliminary or formal one.

In this case, however, other circumstantial evidence appears in the record. Before bringing his action, the plaintiff, as traffic manager for his assignor, presented his claim to the defendant through its general claim agent. In support of his claim, he was required to furnish certain data. These data included a statement of facts by the agent of the delivering carrier. It was also required that the bill of lading should be attached to the claim, and in effect certified to by the agent of the delivering carrier. The general claim agent of the defendant received this claim, with its supporting papers. The claim was refused; upon what grounds does not appear. Before bringing this suit, the plaintiff wrote to the general claim agent of the defendant, requesting the return of his supporting papers. This request was complied with. The transmitting letter of the general claim agent contained the following statement:

"As requested I return your supporting papers consisting of the original Bill of Lading, Freight Bill and certified copy of invoice."

Exhibit C was the bill of lading inclosed in such transmitting letter, and referred to therein. It is not suggested that

such purported bill of lading was ever challenged or questioned by the defendant or by anyone in its behalf at any time. The sole point made is that the preliminary evidence of identity and execution was insufficient to support its offer in evidence. We deem the point without merit. What is said here concerning Exhibit C is applicable to the other bills of lading introduced.

III. It is also urged that the plaintiff failed to prove his measure of damages. This assignment of error is predicated upon two grounds: (1) That the true measure of damage would be the value of the coal lost at Des Moines, and that the plaintiff offered evidence only as to its value in Kentucky; (2) that the plaintiff, as a witness, was incompetent to testify as to the value of the coal in Kentucky, for want of personal knowledge on the subject.

4. CARRIERS: carriage of goods: failure to deliver: measure of damages.

It is undoubtedly true that ordinarily the measure of damage for a shipment lost in transit is the value of the same at the point of destination, rather than at the point of shipment. In so far as this rule differentiates between the point of shipment and the point of destination, it is intended to operate in favor of the shipper. Its assumption is that the value is greater at the point of destination than at the point of shipment, to the extent at least of the cost of transportation. Ordinarily, the value at the point of destination is substantially dependent upon, if not controlled by, the value at point of shipment. This is peculiarly true where the shipper is a coal dealer at the point of destination, and purchases his coal at the point of shipment for the purpose of resale at the point of destination. We know of no reason why, in such a case, the shipper may not waive the difference, and reduce his claim to the value at point of shipment. If any exceptional circumstances appear, such as a falling market, so that the value at destination would be less than at the point of shipment, the ruling of the court could be governed accordingly. In this case, the shipper had no occasion to sue for cost of transportation, because he paid the freight only upon the corrected weights at Des Moines. The plaintiff testified also, in substance, that the value at Des Moines was the same as at the point of shipment, plus transportation.

It is urged, however, that the plaintiff was not shown to be qualified as a witness on the question of value in Kentucky. It

appears that he was a resident of Des Moines, and had never been in Kentucky. He was a coal dealer, and had been engaged in that business in Des Moines for 18 years. During that period of time, he had been purchasing coal in Kentucky and in other points outside the state of Iowa and shipping the same for resale in Des Moines. It is urged that all he knew and testified to on the subject of value in Kentucky was mere hearsay. There is a sense in which it is true that all purported knowledge of market values, and especially of distant markets, is hearsay. In that sense only can it be said that the knowledge of this witness was hearsay. The rules of evidence, however, recognize knowledge of market values as something substantive, and distinct from mere hearsay. An intelligent coal dealer engaged in business in Des Moines, who habitually purchases his stock in Kentucky and in other places, must be presumed to act with knowledge. It is clearly unnecessary that he should go in person to Kentucky, in order to ascertain the price at which he can purchase Kentucky coal. The market value of an article of trade is the price at which it can be bought and sold in the ordinary course of trade. This witness is a Des Moines dealer, and through long course of dealing could properly say, as he did, that he knew the price of this coal in Kentucky. The price named by him was the price he had paid. We think he was a competent witness. In the absence of other evidence, we think the defendant suffered no prejudice from the fact that the proof showed the price in Kentucky, rather than in Des Moines. We think the inference was clearly justified that it was worth no less in Des Moines than in Kentucky.

5. EVIDENCE: opinion evidence: competency of expert: value at distant market.

For the reasons herein indicated, we think the judgment below should be—*Affirmed.*

DE GRAFF, C. J., and ALBERT and MORLING, JJ., concur.