PENNSYLVANIA RAILROAD COMPANY *v.* WINDFALL GRAIN COMPANY.

[No. 14,194. Filed October 13, 1931.]

*John L. Rupe, Clarence M. Brown* and *Newby & Newby,* for appellant.

*Arthur C. Call,* for appellee.

LOCKYEAR, J.—The facts in this case were found specially by the court with conclusions of law stated thereon.

The appellant's brief states the facts as found by the court in a succinct manner as follows: This was an action brought by the Windfall Grain Company, as plaintiff, the owner of a number of grain elevators, against the Pennsylvania Railroad Company, the defendant, for loss of grain in shipment, the complaint being in 21 paragraphs, each representing a separate shipment. In each of the shipments, the grain, all of which was shelled corn, bulk oats and wheat, was weighed by the plaintiff in hopper scales owned and used by the plaintiff; that the scales were of different capacities, and the grain was weighed in different drafts, and the total of each shipment being determined by the additions of the weights of the various drafts which made up such shipment. After plaintiff had thus weighed the grain, he wrote down on a piece of paper the weight of each draft, and then added the weight of each draft, making a total weight of the grain for each car. Plaintiff then gave to the defendant's agent at the local station the total weights for each car, and defendant's agent inserted in a bill of lading the weight as given him by the plaintiff. The defendant did not weigh any of the grain, and did not inspect or have any control or jurisdiction over the scales of the plaintiff. The

plaintiff then loaded the grain in the cars as furnished by the defendant. The cars were then sealed and shipped to point of destination. In each of the bills of lading issued by the defendant, it was provided that the weight was subject to correction, and in most cases it was expressly stipulated on the bills of lading that the weight was "shipper's weight" or "shipper's load, weight and count." In each case, the car was weighed at destination, usually by a disinterested party, and the freight was based on the destination weights and not upon the weights ascertained by plaintiff, and the freight was paid on the destination weights. There is no evidence of any actual loss of grain through any negligence of the defendant. There was no evidence of any leakage in any of the cars, but, in the case of each car, the weight ascertained at point of delivery was less than plaintiff's weight, and the question involved is whether or not the carrier is liable for the difference between the shipper's weight, determined by his own weighing on his own scales, and the weight ascertained at point of destination, without any evidence or proof of defective condition of car or of actual loss in shipment.

The court found the facts as to the first paragraph of the complaint as follows: "That, on March 3, 1926, plaintiff delivered 110,000 pounds of shelled corn to the defendant at Hemlock, Indiana, for shipment to plaintiff's order, Cincinnati, Ohio; that said corn was accepted for shipment by the defendant and was shipped in P. R. R. Car No. 98940; that the defendant's agent at Hemlock, Indiana, issued a bill of lading therefor in which the weight of said corn was given as 110,000 pounds and which contained the statements, 'Weight subject to correction' and, 'Shippers Load'; that said car was in good condition for shipment of grain at Hemlock, Indiana, and, upon arrival at Cincinnati, Ohio,

its condition was good; that said car, after being loaded with said corn, was sealed at Hemlock, Indiana, and upon arrival at Cincinnati, Ohio, the seals were unbroken; that defendant delivered to plaintiff's order at Cincinnati, Ohio, 108,900 pounds of said shelled corn accepted by defendant for shipment at Hemlock, Indiana, and failed to deliver 1,100 pounds of said shelled corn; that the value of said shelled corn was 62 cents per bushel, less freight, and the value of the said 1,100 pounds less freight was $10.64."

The facts as to each of the other paragraphs were found in the same language, varying only as to kinds of grain and amounts, the total amount that the appellee is entitled to recover on all paragraphs being $435.61, for which amount judgment was rendered.

Proper exceptions to the conclusions of law were taken, and the question for us to decide, as stated by appellant, is whether or not the carrier is liable for the difference between the shipper's weight, determined by his own weighing on his own scales, and the weights ascertained at the point of destination, without any evidence or proof of a defective condition of the cars or actual loss in shipment.

The finding of facts is to the effect, however, that, in each instance, a certain amount of grain was actually delivered by the appellee to the appellant. Here are two parties submitting to a trial court the question of the amount of grain delivered to the carrier. The shipper weighs the grain and testifies to the amount delivered. The agent of the carrier does not weigh it when it is delivered, but it is weighed at the place of delivery.

Section 21, Act Cong. Aug. 29, 1916 (49 USCA §101), the same being §101 Mason's U. S. Code, title 49, provides as follows: "The carrier may also by inserting in the bill of lading the words 'shipper's weight, load, and count,' or other words of like purport, indicate that

the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading or by the nonreceipt or by the misdescription of the goods described in the bill of lading." There is apparently some conflict of opinion in the decided cases on the question of burden of proof in cases of this kind and as to how much evidence the shipper must introduce in order to make out a *prima facie* case.

There being no case directly in point that we have been able to find in Indiana, the nearest parallel case is that of *Morris* v. *Minneapolis, etc., R. Co.* (1913), 25 N. D. 136, 141 N. W. 204. The action was by a shipper against a carrier, wherein the plaintiff made proof by evidence that 62,440 pounds of barley were placed in a car for shipment, but only 57,480 pounds were received by the consignee. The total amount of barley was weighed by a number of different drafts or weighing operations (21), as in the case at bar. A bill of lading was issued and the car was sealed. On this evidence, the lower court directed a verdict for the railroad company, and, on appeal, was reversed by the Supreme Court, in which opinion the court said: "As far as the facts in this case are concerned the common carrier insured the delivery at destination of all the barley that it received from the plaintiff for transportation. . . . A prima facie case is established by proof that the carrier received the goods for transportation and failed to deliver them safely." The court says further, "Proof of a certain weight is proof of a fact. Whether presumably correct does not matter. . . . The proof that, at shipment, this barley weighed 62,440 pounds, prima facie established its quantity. . . . Proof that, at delivery, but 57,460 pounds of barley was contained in the car establishes prima facie the amount delivered the

consignee. . . . The amount of loss may be termed a calculation, an inference, or a presumption; it does not matter what." It was held that there was enough evidence to submit the case to a jury, and that to require the plaintiff to prove more would be to require of the shipper such a degree of proof of loss as is ordinarily impossible for him to obtain and produce at the trial. To the same effect, see *Schott* v. *Swan* (1908), 21 S. D. 639, 114 N. W. 1005; *Baker* v. *Dittlinger Roller Mills Co.* (1918), 203 S. W. (Texas Civ. App.) 798; *National Elevator Co.* v. *Great Northern R. Co.* (1917), 137 Minn. 217, 163 N. W. 164; *Shellabarger Elevator Co.* v. *Illinois Central R. Co.* (1917), 212 Ill. App. 1; *Brennisen* v. *Pennsylvania R. Co.* (1907), 100 Minn. 102, 110 N. W. 362, 10 Ann. Cas. 169; *Little Rock, etc., R. Co.* v. *Hall* (1878), 32 Ark. 669; *Hastings* v. *Pepper* (1831), 11 Pick. (Mass.) 41. See *Railway Company* v. *Manchester Mills* (1890), 88 Tenn. 653, 14 S. W. 314, cited in *Terre Haute, etc., R. Co.* v. *Sherwood* (1892), 132 Ind. 129, 31 N. E. 781, 17 L. R. A. 342, 32 Am. St. 239; *Inman* v. *South Carolina R. Co.* (1889), 129 U. S. 128, 9 Sup. Ct. 249, 32 L. Ed. 612.

In 5 Elliott, Railroads (3rd ed.) §2746: "The shipper suing for nondelivery of his goods has the burden of proving this fact. Owing to the essentially negative character of the issue, however, slight evidence of nondelivery will suffice." Citing *Chicago, etc., R. Co.* v. *Provine* (1883), 61 Miss. 288; *Woodbury* v. *Frink* (1853), 14 Ill. 279; *The Falcon* (1853), 3 Blatchf. (Fed.) 64, Fed. Cas. No. 4617.

In the case of *Terre Haute, etc., R. Co.* v. *Sherwood, supra,* Elliott, C. J., speaking for the court, lays down the doctrine that, "In cases where the carrier has full custody of the property there is, *prima facie,* at least, actionable breach of the contract when the failure to safely carry is shown, because, as said in the case of

*Inman* v. *South Carolina R. W. Co.*, 129 U. S. 128 (139), 'in case of loss the presumption is against the carrier.'

"The common law has been relaxed so as to permit a common carrier to limit his liability, but this change in the law does not go to the extent of allowing a carrier to contract for a complete exemption from liability, nor does it go to the extent of changing the rule that when the failure to carry is affirmatively shown, the burden of showing exemption from the duties and obligations imposed by law rests upon the carrier. The rule that the presumption is against the carrier, in cases where he has full charge and custody of the property, is in harmony with the doctrine sustained by a long line of cases, a line beginning far back in the early years of the common law and continuing unbroken to the present, that where injury to a passenger is shown the presumption is that the carrier was in fault. The rule that the burden is on the carrier, who has the exclusive custody of the property, is a reasonable one, inasmuch as it is but just to require the carrier who has the property in complete custody, who knows and controls the men, who manages the instrumentalities of transportation, and who has the means of explanation at hand, to show what caused the loss or injury, rather than to cast that burden upon the shipper, whose means of information are comparatively meager, and whose power of securing knowledge of the fact is circumscribed within very narrow limits."

There is a line of cases not in harmony with the view above stated; the leading case is that of *Nye-Schneider-Fowler Co.* v. *Chicago, etc., R. Co.* (1921), 106 Nebr. 149, 182 N. W. 967, but, in that case, and in all others that appear to be in conflict with the line of cases first discussed, the facts proved distinguish the cases from the one at bar, for example, in the case above cited, there was evidence introduced as to the shrinkage in

varying amounts during shipment. In the case at bar there was no evidence introduced to show how much, if any, shrinkage, or whether there had been any shrinkage at all in the course of shipment, and, in other cases, the questions involved would rest upon the instructions given by the court to the jury when evidence of shrinkage was introduced.

In the case at bar, there is a positive finding of fact that the carrier received a certain amount of grain and failed to deliver that amount at destination. The evidence is sufficient to sustain the finding of facts, and the conclusions of law thereon are not erroneous.

Judgment affirmed.