R. V. LEDOUX *v.* RAILWAY EXPRESS AGENCY, INC.

January Term, 1944.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed February 1, 1944.

*Sylvester & Ready* for the plaintiff.

*McFeeters & Kissane* and *P. C. Warner* for the defendant.

STURTEVANT, J. This is an action for breach of contract. The defendant filed no pleadings and so under the rule the case stood on the general issue. Trial was by court and on the findings filed judgment was entered for the defendant. The plaintiff contends that upon the findings as made judgment should have been entered for him and the case is here upon his exceptions.

The following material facts appear from the findings. The plaintiff is a florist having his place of business at St. Albans in this State. On December 19, 1942, he telephoned to the Frank Edger Company at Waverly, Mass., an order for certain plants. That company operates a greenhouse and packing shed at Waltham, Mass. At sometime during the day, December 21, 1942, the Edger Company at its packing house in Waltham, Mass., delivered the plants to the defendant, a common carrier, for transportation by express to the plaintiff's place of business at St. Albans, Vt. The defendant's receipt issued for this shipment describes it as, "3 crates live plants in clay pots." When received by the defendant the plants were in good condition, were in the dirt in which they had grown in clay pots and were wrapped in 8 thicknesses of paper to protect them from frost. The crates in which they were placed were lined with heavy paper and each had two cards fastened to it, one reading, "THIS SIDE UP," and on the other was printed, "HANDLE WITH CARE—LIVE

PLANTS—KEEP FROM HEAT & FROST—RUSH." The defendant delivered this shipment at the plaintiff's place of business in St. Albans, Vt. at about 9-45 o-clock in the evening of December 23, 1942. At that time, "said pots were broken, the dirt in the pots was frozen, the said plants were frozen, flattened out and of no salvage value whatsoever." The plaintiff paid the defendant its express charges on this shipment in the sum of $5.39. The fair replacement value of the plants was $50.00 and the damage to them occurred during the time they were in the possession of the defendant as a common carrier. The last finding is as follows:

"I find that the defendant's liability is limited to the terms set forth in the Uniform Express Receipt, plaintiff's exhibit No. 1, and tariffs,. defendant's exhibit A, filed with the Interstate Commerce Commission, under which shipment was made and accepted for transportation by the defendant, in that there was no obligation contained therein whereby the defendant was obligated to provide heat for car to protect the plants from freezing."

The defendant introduced no evidence at the trial excepting a copy of the tariff rates mentioned in the above quoted finding. This exhibit contained more than 150 pages and was offered in connection with the express receipt introduced by the plaintiff, for the purpose of showing that, "no special service is provided for protection against freezing." The defendant in its offer designated no particular page or section in its tariff schedules and the offer was received over the plaintiff's exception.

The express receipt and the tariff schedules are brought into the findings only by reference to the number or letter marking them as exhibits. This is not sufficient to bring the facts stated therein before us. The findings can not be supplemented in that way. *Bardwell* v. *Commercial Union Assurance Co. Ltd.,* 105 Vt 106, 111, 163 A 633.

Without deciding, let us assume that the court was correct in its conclusion stated in the findings to the effect that under the terms of this shipping contract the carrier was not obligated to provide heat for the car to protect these plants from freezing. Even so, it does not follow that the defendant was entitled to judgment. It appears from the findings that the plants were delivered to the carrier at Waltham, Mass., on December 21, 1942. The defendant

delivered this shipment to the plaintiff at St. Albans, Vt., at about 9-45 o'clock in the evening of December 23, 1942. The defendant had possession of the plants about 48 hours or more. How much of this time they were in the car in which they were transported does not appear. The fact that the dirt in the pots was frozen when delivery was made reasonably indicates that the plants had been exposed to a low temperature for a considerable time. Whether the freezing took place in the car, in doors or out of doors does not appear and no evidence was introduced from which such finding could be made.

██ This being an interstate shipment, the rights of the parties depend wholly upon the Federal statutes, the bill of lading, in this case referred to as "the express receipt," and the rules of the common law, as accepted and applied in the Federal Courts. *Piper* v. *B. & M. RR. Co.,* 90 Vt 176, 179, 97 A 508; *Cincinnati, N. O. & Tex. Pac. R. Co.* v. *Rankin,* 241 US 319, 36 S Ct 556, 60 L Ed 1022, LRA 1917 A 265. By common law, a common carrier is answerable for every loss or damage happening to goods in his custody as such carrier, unless caused by the act of God or the public enemies. *Hall* v. *Nashville & Chattanooga R. Co.,* 13 Wall 367, 80 US 367, 20 L Ed 594. This exceptional liability is imposed from consideration of public policy. *Haglin-Stahr Co.* v. *Montpelier & Wells River R. R.,* 92 Vt 258, 261, 102 A 940.

██ Prima facie, a common carrier, by accepting goods for transportation, incurs the responsibilities put upon him by the common law, or that law as modified by statute. *Park* v. *Preston,* 108 NY 434, 15 NE 705; *Haglin-Stahr Co.* v. *Montpelier & W. R. RR.,* 92 Vt 258, 261, 102 A 940. Any one asserting the contrary assumes the burden of proving it. *N. J. Steam Nav. Co.* v. *Merchants Bank,* 6 How. 344, 12 L Ed 465, Haglin-Stahr case, *supra,* 92 Vt at 261, 102 A at 941.

██ The common law rule as to the liability of common carriers has been somewhat modified by Federal laws. As now generally recognized and accepted, the law as to such liability is that such carrier is liable for loss or damage, unless caused by the act of God, the public enemies, the fault of the shipper, acts of public authority, the inherent nature of the property, or some cause against which the carrier has lawfully contracted. In speaking of this extraordinary liability of a common carrier, it should be con-

stantly kept in mind that, while it is usual to use the term "negligence" in speaking of it, the "prudent man" rule as commonly understood does not apply thereto. All that is necessary to establish prima facie liability is to show the goods were delivered to the carrier in good condition and when delivered by the carrier they were in bad condition. Upon such a showing the carrier is presumed to be at fault unless he shows that the damage resulted from some of the causes above specified. *Hall* v. *Nashville & Chattanooga R. Co.,* 13 Wall 367, 80 US 367, 20 L Ed 594; *Galveston etc. R. Co.* v. *Wallace,* 223 US 481, 32 S Ct 205, 56 L Ed 516; Haglin-Stahr case, *supra,* 92 Vt at 261-264 both inc., 102 A 941, 942. Under such circumstances the plaintiff is not bound to prove his case and to disprove the existence of a defense. Haglin-Stahr case, *supra,* 92 Vt at 264, 102 A at 942, and cases cited.

In the case at bar the findings show the plants to have been in good condition when received by the defendant and when delivered by it the goods were worthless. We have seen that if we assume that the carrier was not obligated to heat the car in which the plants were transported, a fact which we do not decide, the damage to the plants remains unexplained. The findings show that the plaintiff made out a prima facie case. The defendant having failed to introduce evidence to meet this it follows from what we have hereinbefore stated that it was error for the court to enter a judgment for the defendant.

*Judgment reversed. Judgment for plaintiff in the sum of $55.39 with interest from December 23, 1942, to day of payment.*