AMERICAN BITUMULS Co., Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Intervener.

Nos. 69, 70, 86 and 88.   Argued March 18, 1946.—Decided July 1, 1946.

*James R. Beverley* and *Carmen B. Hernández* for petitioner. *E. Campos del Toro, Attorney General,* and *J. B. Fernández Badillo, Attorney of the Department of Justice,* for intervener Treasurer of Puerto Rico, respondent in the main proceeding.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the court.

The petitioning corporation reported to the Treasurer of Puerto Rico that its personal property subject to taxation amounted, on January 15, 1943, to $21,496.50 and, on January 15, 1944, to $25,396.70. The Treasurer notified the petitioner that its personal propery had been assessed at $39,440 for the year 1943–44, and at $65,600 for the tax year 1944–45. Feeling aggrieved by those assessments, the petitioner filed separate complaints with the Tax Court, and in each of them alleged that the assessment made by the Treasurer was unjust and illegal, because it was based on an erroneous interpretation of the term "market value," and because there had been included in it the future profits of the corporation in the sale of the merchandise, on which the income tax had been paid.

Upon being served with notice of the imposition of the tax for each of said years, the petitioner paid the amount with which it agreed and filed two new complaints, in which it alleged as additional grounds against the tax imposed upon it, that the Treasurer had valued the asphalt (bitumuls)

stored in the tank on January 15, 1943, and on January 15, 1944, taking as a basis the retail market value of each gallon, instead of taking as a basis the cost of the merchandise delivered at the warehouse of the petitioner.

On October 19, 1945, the Tax Court held in both cases that the stocks of "bitumuls" and 'laykold" belonging to the complainant had been assessed by the Treasurer pursuant to a reasonable and correct procedure; but that, in so far as the amount of said stocks was concerned, said officer should proceed to make the assessments, in the manner and at the prices already determined by him, upon 132,990 gallons of "bitimuls" and 8,250 of "laykold" for the year 1943–44 and on 252,873 gallons of "bitimuls" and 109 gallons of "laykold" for the year 1944–45, as these were the amounts of said products which the taxpayer actually had in stock on the aforesaid dates.

Feeling aggrieved by the decisions of the Tax Court, the taxpayer filed, on November 21, 1945, the two petitions for certiorari in cases Nos. 69 and 70. We will consider and decide them in a single opinion·herein as they both involve the same question.

The petitioner alleges, in brief, that the Tax Court erred in holding that the procedure followed by the Treasurer in assessing the merchandise is reasonable and correct, when in fact it is not, for the following reasons:

(1) Because in assessing the full stock of the merchandise no account was taken of its replacement value but of its value in the retail market, including therein future profits, which are uncertain and fortuitous.

(2) Because the "market value" is what a purchaser would be willing to pay, that is, what the merchandise cost upon its delivery at the warehouse, or its replacement cost; and not its retail price, as maintained by the Treasurer, since the retail price is an indeterminate factor, which fluctuates and may be affected by numerous .circumstances such as competition, demand, and the introduction of other products.

(3) Because the Treasurer assessed the merchandise as a whole, valuing it as if sold at retail, which is contrary to law and commercial practice.

(4) Because in assessing the property that officer took into consideration future profits of the petitioner, thereby imposing on the latter a double taxation, since said profits are subject to the payment of income taxes.

On February 26, 1946, the Treasurer moved to dismiss both certiorari proceedings, and alleged that this court lacked jurisdiction to take cognizance of the same (a) because, since a new computation had not been filed nor the secretary had notified the finality of the decisions sought to be reviewed, the proceedings were premature; and (b) because no payment under protest had been made.

On April 12, 1946, the petitioner filed two new petitions for certiorari, Nos. 86 and 88, wherein it reproduced all the averments of the previous petitions, and alleged, as additional facts, that on March 11, 1946, the Treasurer filed a computation of the tax due; that said computation was appproved and notice of the finality of the decision of the respondent tribunal was served on the petitioner on the 14th of that same month; that on April 12, 1946, the petitioner paid under protest the balance due on said decision; and that these new petitions were filed in view of the holding of this court in *Island Needlework Inc.* v. *Tax Court,* certiorari case No. 64, 65 P.R.R. 685.

Even if we were to hold that the proceedings in cases Nos. 69 and 70 were prematurely instituted, we would always have jurisdiction to take cognizance of the proceedings in cases Nos. 86 and 88 which involve the same question. We will therefore proceed to consider and decide the latter on its merits.

There is no dispute as to the amount of the stocks on which the tax must be paid; the Tax Court accorded full credit to the evidence introduced by the complainant and held that the stocks of said products on January 15, 1944,

amounted to 252,873 gallons of "bitumuls" and 109 gallons of "laykold." The only question to be considered and determined by us is which of the two procedures is reasonable and correct: (a) the one followed by the Treasurer of Puerto Rico, wherein he took as the basis for the assessment the retail price of the merchandise, including therein future profits; or (b) the one suggested by the petitioner, that is, that the assessment should have been made by taking as a basis the replacement cost of the merchandise, plus the expenses incurred in the transportation thereof to the warehouse of the taxpayer.

The applicable provisions of the Political Code of Puerto Rico are as follows:

"Section 294.—So much of the property of any manufacturer, merchant or tradesman as may consist of stocks of material or merchandise shall be listed separately and assessed upon its average market value during the year next preceding the time of assessment; and the assessor may in assessing such stocks require of such manufacturer, merchant or tradesman to produce the last inventory thereof, and if in the judgment of the assessor the same is not correct, or if such time has elapsed since the inventory was taken that it shall have ceased to be reliable as to the value thereof, and such merchant or tradesman should not produce a new inventory within ten days thereafter, or if the assessor does not consider the last inventory to be reliable, then the assessor shall appraise the said stock by personal examination."

Let us examine the decisions on which the Tax Court relied for holding, as it did, that the "market value" of the merchandise for purposes of assessment is the price at which the owner or producer of the merchandise offers it at retail to whoever may desire to buy it in the ordinary course of trade.

In *Cliquot* v. *United States,* 70 U.S. 114, 18 L. ed. 118, the Federal Government instituted a proceeding for the forfeiture of several cases of champagne exported from France and imported through the port of San Francisco. The libel set forth that the consignee "had produced and used an

invoice which did not contain a true and full statement of the actual market value of said goods and merchandise at the time and place when and where the same were procured or manufactured; but that, on the contrary, as the said owner well knew, the said invoice was false, and that the market value of said goods and merchandise was much greater than the sums . . . stated in said invoice." The judge who presided at the trial in his instructions to the jury defined the "market value" of the merchandise, thus:

" . . . the price at which the owner of the goods, or the producer, holds them for sale; the price at which they are freely offered in the market to all the world; such prices as dealers in the goods are willing to receive, and purchases are made to pay, when the goods are bought and sold in the ordinary course of trade."

The Supreme Court affirmed the judgment ordering the forfeiture. Subsequently, in *British & Foreign Marine Insurance Co.* v. *Maldonado & Co., Inc.,* 182 Fed. 744, and in *Muser* v. *Magone,* 155 U.S. 240, 39 L. ed. 135, the above-quoted instruction was cited with approval.

The cases last-above cited dealt with the assessment and collection of *ad valorem* customs duties on merchandise bought in foreign markets and imported into the United States. According to § 2906 of the Revised Statutes, "When an *ad valorem* rate of duty is imposed on any imported merchandise . . . the collector . . . shall cause the actual market value, or wholesale price thereof, at the period of the exportation to the United States, in the principal markets of the country from which the same has been imported, to be appraised, and such appraised value shall be considered the value upon which duty shall be assessed." In the *Cliquot* case, as well as in *Muser* v. *Magone,* which dealt with cotton embroideries, the appraisers took as a basis for the appraisal of the merchandise the wholesale price paid in the foreign market where it was bought by the importer for the purpose of bringing it into the United States. But in neither of those cases was there taken as a basis for appraisal the retail price

of the imported merchandise in the consuming market. Really the rule applied in said cases was that of taking as a basis the replacement value of the merchandise, that is, what it would cost to replace the merchandise, when buying it at wholesale in the producing market.

We agree with the respondent court that the jurisprudence established by the Federal Supreme Court should be followed by us in so far as it may be applicable, but we can not agree that the cases which we have just examined bind us to uphold the decision sought to be reviewed.

There are numerous cases from state jurisdictions wherein it is held that "market value" means "replacement cost" or "the price at which the goods can be replaced for money in the market; not the price for which they are sold at retail."[1] In *Rust-Owen Lumber Co. v. Wisconsin Tax Commission, infra,* it was held that "Market . . . means purchase market, not sales market. It should never be construed as meaning the selling prices of the concern to which the goods belong. Such a basis for inventory valuation would result in anticipating profits, or losses, which is not countenanced by good accounting."

Mertens, in his work "Law of Federal Income Taxation." vol. 10, § 59.02, p. 440, says:

"Value for tax purposes is in general terms considered to be *the amount which a willing seller and a willing and able buyer, both familiar with the situation, reasonable in their views, acting for their own interests, and each willing to make such adjustments in his views upon value as might be necessary to bring about a sale at a reasonable amount fair to both parties, would pay and accept."*

In *Appeal by Borough of Millbourne,* 198 A. 49, 329 Pa. 321, it was held:

"The proper way to fix assessment value of property for purpose of taxation by borough is to determine its "actual value," which

---

[1] *General Fire Extinguisher Co.* v. *Beal-Doyle Dry Goods Co.,* 160 S.W. 889, 892; *Wehle* v. *Haviland,* 69 N. Y. 448; *Rust-Owen Lumber Co.* v. *Wisconsin Tax Commission,* 231 N.W. 870; *H. Liebes & Co.* v. *Klengenberg,* 23 Fed. (2d) 611.

means its "market value," which is defined as the price which a purchaser willing but not obliged to pay would pay an owner willing but not obliged to sell, taking into consideration all uses to which property is adapted."

The same definition may be found in numerous other decisions.[2] But in none of the cases have we been able to find that in the assessment of merchandise for the purpose of the payment of personal property taxes there has been taken as a basis the retail price of the merchandise, as was done in the instant case.

We think that the procedure followed by the Treasurer, namely, that of taking as a basis for the assessment the retail price of each gallon of "bitumuls" and of "laykold," stored in the tanks of the taxpayer on January 15 of each of the years in question, is contrary to the statute, inasmuch as the owner of the merchandise is thereby compelled to pay taxes on profits not yet realized and which perhaps might never be realized. If property stored in the warehouse of the taxpayer and not sold on January 15 should be destroyed by fire on January 16, the taxpayer, according to the method followed by the Treasurer, would be bound to pay a tax not only on the replacement value of the merchandise but also on any profits which he might have earned but did not earn by reason of the destruction of the merchandise. That was not and could not have been the purpose of the lawmaker.

We are of the opinion, and so hold, that the procedure which the lawmaker had in mind for fixing the value of the stocks of merchandise and other goods kept for sale is to take as a basis the average market value thereof, that is, the replacement cost to the trader during the year next preceding the date of the assessment.

---

[2] *Kansas City W. & N.W.R. Co.* v. *Fisher,* 30 Pac. 111; *Dady* v. *Condit,* 58 N.E. 900, 902; *Clark* v. *Commercial Trust Co.,* 181 A. 269, 119 N. J. Equity 133; *Madisonville* v. *Ross,* 103 S.W. 330; *Underwood Typewriter Co.* v. *City of Hartford,* 122 A. 91; *Smith* v. *Louisville & N.R. Co.,* 209 N.W. 465; *Cumberland Pipe Line Co.* v. *Commonwealth,* 15 S.W. (2d) 280; *Philadelphia & Reading Coal Co.* v. *Commissioners,* 186 A. 105. See "The Valuation of Property," by James C. Bonbright, pp. 291 and 506.

The decision sought to be reviewed should be set aside and the case remanded to the Tax Court for further proceedings not inconsistent with this opinion.