LOUIS PADNOS IRON COMPANY v CHESAPEAKE AND OHIO
RAILWAY COMPANY

Docket No. 81393. Submitted November 5, 1985, at Grand Rapids.—
   Decided February 19, 1986.

   Plaintiff, Louis Padnos Iron Company, engaged defendant, Chesa-
   peake & Ohio Railway Company, to transport its scrap metal
   by rail from its business location in Holland to various loca-
   tions around the United States. Plaintiff filed several claims,
   pursuant to 49 USC 10707, with defendant for the loss of scrap
   metal based upon the difference between the net weight of the
   metal at the point of origin and the net weight of the metal at
   the point of destination. Defendant refused to pay plaintiff's
   claims in whole or in part. Thereafter, plaintiff brought a suit
   for damages in the Ottawa Circuit Court. Defendant counter-
   claimed and sought a declaratory judgment that it could unilat-
   erally adopt a 1% tolerance factor on all shipments of scrap
   metal and reduce all claims of loss by the tolerance factor. The
   circuit court, James E. Townsend, J., entered a judgment for
   $7,941.28 in favor of plaintiff after ruling that defendant had
   no authority to apply a tolerance factor and, assuming *argu-
   endo* that defendant could apply a reasonable tolerance factor,
   there was no evidence that any tolerance factor was reasonable
   in this case. Defendant appealed. *Held:*

   1. A decision of the Interstate Commerce Commission, which
   approved the use of a reasonable tolerance factor when deter-
   mining the actual loss of scrap metal during shipment, applies
   only to voluntary settlements of loss and damage claims and
   does not apply when loss and damage claims are litigated in
   court. Under provisions of the Interstate Commerce Act, a
   common carrier is liable for the actual loss or injury to prop-
   erty transported by the carrier and is prohibited from limiting
   or exempting liability except as expressly authorized.

   2. Even if defendant were entitled to the use of a tolerance

REFERENCES

Am Jur 2d, Carriers §§ 33-73, 507-661.
Validity and construction of stipulation exempting carrier from
   liability for loss or damage to property at nonagency station. 16
   ALR3d 1111.
See also the annotations in the ALR3d/4th Quick Index under
   Railroads.

factor, the record below lacked sufficient evidence to establish the reasonableness of the tolerance factor which plaintiff sought to use.

Affirmed.

1. RAILROADS — LIABILITY FOR LOSS DURING TRANSPORT.

A decision of the Interstate Commerce Commission, which approved the use of a reasonable tolerance factor when determining the actual loss of scrap metal during shipment, applies only to voluntary settlements of loss and damage claims and does not apply when loss and damage claims are litigated in court.

2. CARRIERS — INTERSTATE COMMERCE ACT — LIABILITY FOR LOSS DURING TRANSPORT.

Under provisions of the Interstate Commerce Act, a common carrier is liable for the actual loss or injury to property transported by the carrier and is prohibited from limiting or exempting liability except as expressly authorized (49 USC 11707[c][1]).

3. CARRIERS — INTERSTATE COMMERCE ACT — RAILROADS — LIABILITY FOR LOSS DURING TRANSPORT.

A shipper establishes a prima facie case against a rail carrier under the Interstate Commerce Act when it proves delivery of the goods to the carrier, arrival of the goods in a diminished quantity or quality at the final destination, and the amount of damages (49 USC 11707[a]).

4. CARRIERS — LIABILITY FOR LOSS DURING TRANSPORT — DEFENSES.

A carrier is liable for loss or damage during shipment unless it can demonstrate that it was not negligent and that one of five recognized defenses applies: (1) an act of God; (2) an act of a public enemy; (3) an act of the shipper; (4) an act of a public authority; or (5) the inherent nature or vice of the goods.

*Farr & Oosterhouse* (by *D. Scott Stuart*), for plaintiff.

*Cunningham, Mulder & Breese, P.C.* (by *Kenneth B. Breese*), for defendant.

Before: R. M. MAHER, P.J., and M. J. KELLY and H. W. MOES,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Defendant appeals as of right from a judgment entered in favor of plaintiff in the amount of $7,941.28, following a bench trial.

Plaintiff is in the business of collecting, processing and selling scrap metal. Defendant is a common carrier and is engaged in the business of transporting scrap metal by rail. Defendant routinely transported scrap metal from plaintiff's place of business in Holland to various locations throughout the United States. From 1980 to 1982, plaintiff filed 45 claims with defendant, pursuant to 49 USC 11707, for the loss of scrap metal based upon the difference between the net weight of the metal at the point of origin and the net weight of the metal at the point of destination. Defendant rejected plaintiff's claims in whole or in part, refusing to pay a total of $7,941.18. Plaintiff brought this suit for damages. Defendant counterclaimed, seeking a declaratory judgment that it could unilaterally adopt a 1% tolerance factor on all shipments of scrap metal and reduce all claims of loss by the tolerance factor. The trial court concluded that: (1) defendant had no authority to apply a tolerance factor; (2) assuming *arguendo* that defendant could apply a "reasonable" tolerance factor, there was no evidence in this case that any tolerance factor was reasonable; and (3) plaintiff was entitled to $7,941.28, plus costs, for actual damages. We affirm.

The Interstate Commerce Act, 49 USC 10101,[1] governs interstate transportation by common carriers. Section 11707(a) of the act, commonly referred to as the Carmack Amendment, provides that a common carrier is liable for the actual loss

---

[1] Formerly 49 USC 1.

or injury to property transported by the carrier.[2] Section 11707(c)(1) prohibits the carrier from limiting or exempting liability except as expressly authorized. Nowhere in the section is the carrier authorized to limit its liability by unilaterally adopting a loss tolerance factor.

Defendant relies primarily on *In Re: Net Weights for Determining Losses—Scrap Iron & Steel*, 352 ICC 402 (1976), aff'd *Ass'n of American Railroads v ICC*, 195 US App DC 175; 600 F2d 989 (1979), an Interstate Commerce Commission decision which approved the use of a reasonable tolerance factor when determining the actual loss of scrap metal during shipment. However, as defendant concedes, the commission's regulation applies only to voluntary settlements of loss and damage claims, it does not apply when loss and damage claims are litigated in court. *Ass'n of American Railroads, supra*, p 993. The commission does not exercise authority over a civil claim for the recovery of the value of property lost in transit. *Joseph Toker Co v Lehigh Valley R Co*, 12 NJ 608; 97 A2d

[2] Formerly 49 USC 20(11).

The section provides:

"A common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under subchapter I, II, or IV of chapter 105 of this title shall issue a receipt or bill of lading for property it receives for transportation under this subtitle. That carrier and any other common carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Commission under subchapter I, II, or IV are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (1) the receiving carrier, (2) the delivering carrier, or (3) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading and applies to property reconsigned or diverted under a tariff filed under subchapter IV of chapter 107 of this title. Failure to issue a receipt or bill of lading does not affect the liability of a carrier. A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination." 49 USC 11707(a)(1).

598, 602 (1953), citing *Gustafson v Michigan Central R Co,* 296 Ill 41; 129 NE 516 (1920), *cert den* 256 US 698 (1921).

Defendant's attempt to limit its liability by adopting a 1% tolerance factor is in direct contravention of § 11707(c)(1). We agree with the trial court that it was prohibited from applying a tolerance factor when determining plaintiff's actual loss of scrap metal sustained during transportation.

Because of our resolution of this issue, it is not necessary for this Court to address defendant's argument that a 1% tolerance factor is reasonable. However, we agree with the trial court that the record lacks sufficient evidence to establish the reasonableness of the percentage.

A shipper establishes a prima facie case against a rail carrier under § 11707(a) when it proves delivery of the goods to the carrier, arrival of the goods in a diminished quantity or quality at the final destination, and the amount of damages. *Long Island R Co v US Dep't of Agriculture,* 566 F Supp 1448 (ED NY, 1983); *John Morrell & Co v Frozen Food Exp, Inc,* 700 F2d 256 (CA 5, 1983); *Louis Padnos Iron & Metal Co v Chesapeake & O R Co,* 500 F Supp 591 (ND Ill, 1980). A carrier is liable for loss or damage during shipment unless it can demonstrate that it was not negligent and that one of five recognized carrier defenses applies: (1) an act of God; (2) an act of a public enemy; (3) an act of the shipper; (4) an act of a public authority; or (5) the inherent nature or vice of the goods. *S C Johnson & Son, Inc v Louisville & N R Co,* 695 F2d 253 (CA 7, 1982).

In the instant case, plaintiff produced 45 claims, each of which documented the net weight of the scrap metal shipped, the net weight of the scrap metal received, and the unit price of the scrap

metal shipped. A weighmaster testified that plaintiff's scale, that was used in determining net weight, was certified by the Department of Agriculture's Bureau of Weights and Measures and was periodically checked for accuracy by defendant's employees.

Defendant's expert testified in general that four factors could affect recorded weights: (1) weather, *i.e.,* snow, ice or rain; (2) debris; (3) scale deviations and human error; and (4) weighing of coupled cars if an incline exists near the scales. Defendant's expert, however, did not investigate any of plaintiff's 45 claims and did not testify which, if any, of the four factors could explain the weight variations therein. There was no evidence that the first three factors were applicable to this case. Although there was an incline near plaintiff's scales, plaintiff's weighmaster testified that all loaded cars are uncoupled while being weighed.

Plaintiff unquestionably established a prima facie case against defendant. Defendant failed to establish that it was not negligent and that one of the five defenses applied. The trial court's award of $7,941.28 in damages to plaintiff is authorized by law and supported by the record. GCR 1963, 517.1, now MCR 2.613(C).

Affirmed.